1

2                         UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
3                                    AT SEATTLE

4   BAILEY ROTH,

5                      Plaintiff(s),

6          v.                                          NO. C07-106MJP

7   BASF CORPORATION and ZYGROVE                       ORDER ON SUMMARY JUDGMENT
    CORPORATION,                                        MOTIONS: PRODUCT LIABILITY
8
                       Defendant(s).
9

10

11

12         The above-entitled Court, having received and reviewed:

13  1.     Defendants' Motion for Summary Judgment (Dkt. No. 102)

14  2.     Plaintiff's Revised Response to Defendants' Motion for Summary Judgment (Dkt. No. 159)

15  3.     Defendants' Revised Reply Brief (Dkt. No. 161)

16  4.     Plaintiff's Motion for Partial Summary Judgment Holding Defendants Liable Under Product

17         Liability Act (Dkt. No. 110)

18  5.     Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 137)

19  6.     Plaintiff's Reply on His Motion for Partial Summary Judgment (Dkt. No. 150)

20  and all exhibits and declarations attached thereto, makes the following ruling:

21         IT IS ORDERED that the motions of both sides regarding a finding of liability under the

22  Washington Product Liability Act based on failure to warn are DENIED.

23         IT IS FURTHER ORDERED that Plaintiff's motion for summary judgment of liability  under

24  the Washington Product Liability Act based on defective design is DENIED.

25

26  **ORDER ON MTNS FOR S/J**
    **RE: PRODUCT LIABILITY - 1**

1        IT IS FURTHER ORDERED that Defendants' motion for dismissal of Plaintiff's claim under

2  the Washington Product Liability Act based on defective design is GRANTED.

3  **Background**

4        This litigation concerns injuries arising out of a house fire in 2005.  The home in question was

5  purchased by Ray Larsen (a former defendant) in 1980.  The initial tenants were a man and his

6  architect father, who installed (1) a wood-burning stove and (2) a wall covering behind the stove

7  which was allegedly Z-Brick, a faux brick material which was bonded directly to the particle board on

8  the wall.

9        On December 2, 2005, the current tenants (Plaintiff Roth and his housemate Hammond)

10  awakened to discover that the house was on fire.  Hammond escaped with minor injuries; Plaintiff

11  suffered "significant burn injuries" (Def. Mtn., p. 2), including the loss of a hand, disfiguring scarring,

12  and eye and lung damage.  Hammond had disabled all the smoke detectors because the use of the

13  stove would set them off (Roth knew the detectors were disabled).  Other contributing factors to the

14  fire included:

15       1.    The wood-burning stove was installed too close to the wall, in disregard of the

16            manufacturer's installation instructions.

17       2.    A heat shield on the stove was improperly positioned, directing heat onto the wall

18            behind the stove.

19       3.    The wall covering (for purposes of this motion it is assumed to be Z-Brick) was fire

20            resistant but not insulated; i.e., while it did not ignite itself (and in fact did not even

21            show discoloring from the heat), it transmitted heat to the particle board and wooden

22            spacers.  Eventually that heat was sufficient to ignite the interior wall materials.

23       4.    The walls had been "capped" at the top in violation of the building code, so that the

24            heat could not vent out of the wall interior, but instead built up to ignition-level.

25

26  **ORDER ON MTNS FOR S/J**
     **RE: PRODUCT LIABILITY - 2**

1

**Discussion**

2      The Washington Product Liability Act ("WPLA") holds a product manufacturer liable to an

3  injured plaintiff if the plaintiff's "harm was proximately caused by the negligence of the manufacturer

4  in that the product was not reasonably safe as designed or not reasonably safe because adequate

5  warnings or instructions were not provided."  RCW 7.72.030(1).

6  Design defect

7      Plaintiff cites to Washington case law concerning the two tests used to determine "defective

8  design:"[1]

9      1.    Risk-utility test: weighs the likelihood and seriousness of harm against the burden on

10            the manufacturer to design a non-harmful product which still functions in the manner

11            for which the product was intended.

12      2.    Consumer-expectation test: asks if the product is "unsafe to an extent beyond that

13            which would be contemplated by the ordinary consumer."  RCW 7.72.030(3).

14  Higgins, 123 Wn.App. at 827-30.

15      Plaintiff's argument that Z-Brick qualifies as a defective product under the "risk-utility" test is

16  comprised entirely of unsupported conclusory statements that Z-Brick "could have designed a product.

17  . . that was in fact firesafe" and that "the cost and feasibility of minimizing the risk are minuscule."

18  Pltf. Mtn., p. 12.  Plaintiff offers no expert testimony on this issue – all his citations to expert

19  testimony concern the necessity of (and lack of) adequate warnings concerning the use of the product.

20  On this basis, he has failed to establish undisputed material facts sufficient to support a grant of

21  summary judgment on the design defect issue.

22

23

24      [1]  Plaintiff tries to argue that these two tests apply to "design defect" and "failure to warn," but the case which
he cites for the elements of the tests – Higgins v. Intext Recreation Corp., 123 Wn.App. 821, 827-30 (2004) – does not
say the tests apply to failure to warn.  A close reading of the opinion makes it clear that the Higgins court is applying the
25  tests to defective designs only.

26  **ORDER ON MTNS FOR S/J**
**RE: PRODUCT LIABILITY - 3**

1    Regarding Defendants' motion that the product liability claims of this plaintiff regarding the

2    defective design of Z-Brick should be dismissed, the Court is in agreement.  Even assuming that all the

3    facts as presented by Plaintiff are not in dispute, and making every inference on every factual issue in

4    Plaintiff's favor, Defendant is still entitled to judgment as a matter of law on this issue.  The WPLA

5    assesses liability where a product is "not reasonably safe <u>as designed</u>" (emphasis supplied), and

6    Plaintiff has failed to produce any evidence that the <u>design</u> of the Z-Brick product was unsafe.  There

7    is no evidence that Z-Brick was designed to be an insulating material or protect other combustible

8    materials from catching fire.   Plaintiff has produced no evidence (either in his own motion or in

9    response to Defendants' motion) that the faux brick material does not do what it was intended to do or

10   was unreasonably unsafe because of the way it was designed.

11   The crux of Plaintiff's case is that the product was negligently promoted or marketed as

12   "firesafe," "fire resistant" and "fire proof," and advertised for use with fire-producing devices (which

13   was only one of its possible uses – the product had purely decorative functions as well) without

14   adequate warnings of its lack of insulating properties.[2]   There is nothing inherently defective or

15   unreasonably unsafe about a product which is meant to withstand high temperatures without

16   discoloring or burning up itself while not insulating other materials from doing the same, and Z-Brick

17   does not violate the WPLA in that regard.  Plaintiff's theory of liability must rise or fall on whether the

18   manufacturers of Z-Brick failed to warn the reasonable consumer that, in using the material in

19   conjunction with fire-producing devices (fireplaces, wood burning stoves, etc.), it would not act as an

20   insulating agent for other flammable elements.   This is not the harm that the "defective design"

21

22

23      [2]  As Plaintiff himself states, he "will prove at trial that his injuries were caused by the Z-Brick facing's failure
to be 'firesafe' *as marketed and installed*, and by its *lack of appropriate warnings and instructions.*"  Pltf. Mtn. for
24   Partial S/J on Product Liability, p. 2. (emphasis supplied.).   In framing his issues for this summary judgment motion,
Plaintiff speaks only of Z-Brick being "deceptively sold as 'firesafe,'" "sold without warnings about the risk of fire" and
25   "sold without instructions on how to install in proximity to a wood-burning fireplace."  <u>Id.</u> at p. 6.

26   **ORDER ON MTNS FOR S/J**
     **RE: PRODUCT LIABILITY - 4**

1    portion of the WPLA was intended to remedy, and Defendants are entitled to summary judgment of

2    dismissal of this portion of Plaintiff's claim.

3    Failure to warn

4        Neither side succeeds in meeting their summary judgment burden of proof of this element of

5    WPLA liability.

6        Plaintiff's argument that he should be granted summary judgment of liability on his "failure to

7    warn" claim fails on a number of grounds.  First, because he has been unable to produce the person

8    who actually installed the wall covering and the stove, he has no evidence regarding what effect an

9    adequate warning would have had on the installation of the Z-Brick in this house.  Although the Court

10   does not believe that the state of the law is such that Plaintiff is required to produce the person who

11   actually used the product, it might possibly have provided some evidence in support of his motion had

12   he been able to do so.

13       Second, Plaintiff has been unable to produce any packaging, brochures or owner's pamphlets

14   for Z-Brick from the period in which the wall covering at issue was installed (1980).  He has submitted

15   packaging and instructional items from an earlier time (1975) and also more recently, but nothing from

16   the date of installation (which the owner of the house estimates at October or November 1980).  The

17   lack of direct evidence regarding the warnings or absence on warnings on the packaging of the

18   material actually used in the Larsen house highlights the speculative nature of Plaintiff's claim and the

19   absence of the undisputed material facts necessary to his success on this portion of his motion.

20       Finally, the evidence Plaintiff has produced consists of the materials from periods of time prior

21   to and after the date of the actual installation. Even considered as "undisputed evidence of material

22   facts" (i.e., there can be no dispute about the writing on the packaging and pamphlets), this does not

23   entitle Plaintiff to summary judgment as a matter of law on his failure to warn claim.  Both the

24   handbooks from before and after the date that the wall covering and stove were installed contain

25

26   **ORDER ON MTNS FOR S/J**
     **RE: PRODUCT LIABILITY - 5**

1   warnings that "[u]nits must be installed in compliance with code and specified clearance directions

2   with the fireplace unit" (Supp. Perey Decl., Ex. E) and "[b]e sure to conform to local building and fire

3   codes and the clearances specified by the fireplace manufacturer for both walls and hearths."  (Id., Ex.

4   K.)  There certainly can be disagreement about whether these cautionary messages are adequate to

5   warn of the hazards of which Plaintiff complains, but to call them inadequate as a matter of law would

6   be overreaching.

7           By the same token, considering Defendants' motion for summary judgment of dismissal of this

8   claim, the evidence viewed in the light most favorable to Plaintiff mitigates against a grant in favor of

9   the moving party.  The Court does not accept Defendants' argument (offered without statutory or case

10  law support) that Plaintiff is required to prove that a specific installer of Z-Brick (e.g., Larsen's first

11  tenant) viewed the packaging or instructions or what that specific installer of the product might or

12  might not have done in response to any warnings which the packaging or instructions contained.   The

13  standard is whether a reasonable consumer, upon viewing whatever warnings or instructions were

14  provided, would have been adequately cautioned about the potential dangers of using the product.

15          See Lockwood v. AC & S, Inc., 44 Wn.App. 330, 348.  ("The relevant question is. . . whether

16  a warning could have been given that would render the produce safe or at least less dangerous to the

17  ordinary consumer; and whether a warning was given.  The focus is on the product and the

18  expectations of a reasonable consumer.")

19          The Court is not persuaded by Defendants' argument that analyzing the possible effects of a

20  warning on a reasonable consumer constitutes impermissible "speculation."  The case Defendants cite

21  in support of this argument  – Hiner v. Bridgestone/Firestone, Inc., 138 Wn.2d 248, 256 (1999) – is

22  distinguishable: in that case there was a complete absence of warning and the Court was being asked

23  to speculate on what effect the warnings would have had if they had been included with the product.

24  That is not the case here.  The evidence produced has revealed cautionary language concerning the use

26  **ORDER ON MTNS FOR S/J**
    **RE: PRODUCT LIABILITY - 6**

1    of this product.  The issue is whether that is sufficient to apprise a reasonable consumer of the possible

2    dangers associated with the installation of Z-Brick.

3          As mentioned, Plaintiff has produced some evidence of what the packaging and

4    installation/ownership literature of the Z-Brick product said about the use of the wall covering.  A Z-

5    Brick Products Handbook produced by the manufacturer of the product indicates that "[a] primary

6    ingredient in Z-BRICK is vermiculite – a material also used in insulation..."  Supp. Perey Decl., Ex. A.

7    The Court is not prepared to rule as a matter of law that language such as that would not create, in the

8    mind of a reasonable consumer of this product, the impression that it had some insulating properties.

9    Defendant is not entitled to summary judgment of dismissal on Plaintiff's "failure to warn" claim.

10         The Court cannot leave this discussion of Plaintiff's ultimate burden of proof in this matter

11   without mention of the proximate cause issue which arches over his entire claim.  Whether Plaintiff's

12   proof is of a defective design or a failure to warn, he must establish that it proximately caused his

13   injuries.  Further mitigating against a grant of summary judgment in Plaintiff's favor is a serious issue

14   presented in the circumstances of this case: namely, whether the improper installation of the stove (and

15   possibly the improper construction of the wall itself) constitutes an independent intervening cause

16   sufficient to relieve Defendants of liability altogether.  Defendants touch on this argument in their

17   motion and responsive briefing, and the Court finds it sufficiently troublesome to prevent,

18   independently of the other legal concerns raised in the preceding paragraphs, a grant of summary

19   judgment in Plaintiff's favor.

20         The WPLA is inapplicable unless a plaintiff's "harm was proximately caused by the negligence

21   of the manufacturer in that the product was not reasonably safe as designed or not reasonably safe

22   because adequate warnings or instructions were not provided."  RCW 7.72.030(1).  A defendant's

23   negligence is the proximate cause of a plaintiff's injury only if such negligence "in a direct sequence,

24   unbroken by any new independent cause, produces the injury complained of. . . " (WPIC 15.01.)  If an

25

26   **ORDER ON MTNS FOR S/J**
     **RE: PRODUCT LIABILITY - 7**

1   independent intervening (or superseding) act breaks the chain of causation, a prior negligent act by a

2   defendant may no longer be declared the proximate cause of the injury.  Travis v. Bohannon, 128

3   Wn.App, 231 (2005).  The standard in Washington for determining whether an intervening act is a

4   sufficiently superseding cause to relieve a defendant of liability is whether the intervening act can

5   reasonably be foreseen by the defendant.  Micro Enhancement Int'l, Inc. v. Coopers and Lybrand,

6   LLP, 100 Wn.App. 412 (2002); Cramer v. Dept. of Highways, 73 Wn.App. 516 (1994) (intoxication

7   of motorcyclist was an intervening cause, superseding state's alleged negligence in maintaining

8   highway).

9        The foreseeability of an intervening act is ordinarily a question for the finder of fact.   Qualls v.

10  Golden Arrow Farms, 47 Wn.2d 599, 603 (1955).   Without actually using the phrase "independent

11  intervening cause," Defendants raise the issue that their product was not the proximate cause of

12  Plaintiff's injury, and that it was not foreseeable that the stove would be constructed so close to the

13  wall (and without its shielding properly deployed), that the wall would be improperly constructed so as

14  to prevent heat from venting, and that the occupants of the house would disconnect the smoke alarm.

15  The Court finds these to be  valid concerns, and certainly sufficient to deny Plaintiff summary

16  judgment on his WPLA claim.

17                                          **Conclusion**

18       Summary judgment will be granted in Defendants' favor on the issue of the "defective design"

19  portion of Plaintiff's WPLA claim, and that portion of the claim will be DISMISSED.   The remainder

20  of the requests for summary judgment from both sides on issues of product liability will be DENIED.

21       The clerk is directed to provide copies of this order to all counsel of record.

22       Dated:  May _19__, 2008

23                                          Marsha J. Pechman

24                                          U.S. District Judge

25

26  **ORDER ON MTNS FOR S/J**
    **RE: PRODUCT LIABILITY - 8**